# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| ALICIA WILMOTH, BRANDON SCOTT, and ALBERT DIANA, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>STEAK N SHAKE, INC.<br>(An Indiana Corporation),<br><br>and<br><br>SARDAR BIGLARI,<br>　　　　Defendants. | Case No. 1:21-cv-1507-TWP-MG |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

### INTRODUCTION

Plaintiffs have not met their burden of demonstrating they, and the other Managers ostensibly employed by Defendants, are similarly situated under 29 U.S.C. § 216(b). More specifically, Plaintiffs seek conditional collective certification under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA'), on behalf of Managers who (1) did not work for Defendants, and (2) who have agreed to individually arbitrate their claims against Defendants. For these reasons, Plaintiffs, and others who they intend to include within the scope of this action, are not similarly situated, and conditional collective action certification under 29 U.S.C. §216(b) should therefore be denied.

## BACKGROUND

<u>Plaintiffs' Allegations</u>

Plaintiffs are current and former Managers who were employed by Defendant Steak n Shake, Inc. ("Steak n Shake"). Doc. 6, at ¶¶ 1-3. Plaintiffs also claim they were employed by Defendant Sardar Biglari ("Biglari"). *Id.* Although the operative Complaint—*i.e.*, Plaintiffs' Amended Complaint, Doc. 6—makes no reference to Steak n Shake's "Franchise Partners," Plaintiffs' motion requesting conditional collective action certification encompasses "Franchise Partner" locations.[1] Doc. 44 at 1, n. 1. On its face, though, Plaintiffs' Amended Complaint repeatedly limits this action to "current and former 'Managers' employed by Defendants at their corporate owned 'Steak n Shake by Biglari' restaurants[.]" *Id.* at ¶¶ 1-3; *see also id.* at ¶¶ 6, 32, 40. Moreover, Plaintiffs' purported classes, and those with whom they are purportedly similarly situated under the FLSA, only include Managers employed at Defendants' "corporate owned" stores—they make no mention of "franchise partners" or their Managers. *Id.* at ¶¶ 42, 52, 64.

According to Plaintiffs, they, and other Managers, were misclassified as exempt from federal overtime requirements, as well as overtime requirements under Illinois and Ohio law. Doc. 6, *passim*. In particular, Plaintiffs claim they have "the same or similar primary job duties which are controlled in every aspect by Defendants' 'centralized corporate policies and procedures[,]'" which supposedly involve them "spending the vast majority of their time performing the job tasks of nonexempt restaurant workers[.]" *Id.* at ¶¶ 26, 27; *see also id.* at ¶ 45. Plaintiffs now ask the Court to expand the scope of this action by conditionally certifying their FLSA claims under 29

---

[1] Plaintiffs have explained they intend to include within the scope of this action "*Franchise Partners.*" Doc. 44, at 1, n. 1. However, Plaintiffs have clarified "*fully franchised restaurants operating under the*" Steak n Shake *name* are excluded from this action. *Id.* (Emphasis supplied).

U.S.C. § 216(b) "so notice can be sent to all Managers who worked within the past three years at all corporate owned Steak n Shake rest[au]rants." Doc. 44, at 1-2.

Steak n Shake, Inc.

Throughout the United States, and including in Indiana, Illinois, and Ohio, the corporate entity known as Steak n Shake, Inc. owns and operates some Steak n Shake restaurants, and thus they are sometimes referred to as the "corporate-owned restaurants." Ex. B, Evens Decl. ¶ 2.

Steak n Shake's Franchise Partners

By contrast, Franchise Partners own and operate other Steak n Shake restaurants, and thus they are sometimes referred to as "Franchise Partner Restaurants." Ex. B, Evens Decl. ¶ 2.[2] The Franchise Partner Restaurants are separately and independently owned and operated from Steak n Shake, Inc. Ex. B, Evens Decl. ¶ 3.

At the Franchise Partner restaurants, the Franchise Partners—not Steak n Shake, Inc.:

- Make all final decisions with respect to the operation of the Franchise Partner restaurants, including decisions about hiring and firing Managers and other employees.

- Directly supervise and control the work schedules, conditions of employment, and day-to-day work of the Managers and other employees.

- Determine the rate and method of compensation and pay the compensation of Managers and other employees.

Ex. B, Evens Decl. ¶¶ 4-6

Pursuant to certain contractual arrangements with Franchise Partners, for a fee, an affiliate of Steak n Shake, Inc. performs certain administrative services on behalf of the Franchise Partners, including processing payroll and providing accounting and tax services. Ex. B, Evens Decl. ¶ 7. However, the Franchise Partners are responsible for providing the information necessary for Steak

---

[2] Still other Steak n Shake restaurants donts owned by traditional franchisees. Ex. B, Evens Decl. ¶ 2.

49045354.v2-OGLETREE

n Shake's affiliate to perform these administrative services. Ex. B, Evens Decl. ¶ 7. Moreover, the Franchise Partners remain responsible for making all final decisions with respect to the operation of their restaurants, including all employment decisions and functions, such as hiring, firing, wage and hour requirements, recordkeeping, supervision, and employee discipline. Ex. B, Evens Decl. ¶¶ 7-8.

Steak n Shake's[3] Managers Signed Arbitration Agreements

Beginning December 17, 2019, Steak n Shake's employees, including its Managers, were asked to sign Arbitration Agreements requiring them, and Defendants, to arbitrate their claims in individualized arbitration. Ex. A, Nevin Decl. ¶ 3. Steak n Shake used the communication center in its electronic Point-of-Sale system to distribute information about the Arbitration Agreements, including the agreement itself. Ex. A, Nevin Decl. ¶¶ 4-6. More specifically, when a Manager logged into the Point-of-Sale system, there was a message from Steak n Shake's Director of Human Resources, which stated:

- "Please review the [Arbitration] Agreement carefully and click the acknowledgement button to affix your electronic signature to it."

- "If you have questions about the [Arbitration] Agreement, please do not hesitate to contact Human Resources at HRManagers@steaknshake.com."

- "If you would like an electronic copy of the [Arbitration] Agreement please send a written request to HRManagers@steaknshake.com."

Ex. A, Nevin Decl. ¶ 4 and its attached Ex. A-1, Arbitration Agreement's Introductory Message dated December 17, 2019.

The Arbitration Agreement followed; it states, in part:

---

[3] The following background about the Arbitration Agreements pertains to Steak n Shake, Inc.'s Managers, not Steak n Shake's Franchise Partners. Ex. A, Nevin Decl. ¶ 3.

- "This [Arbitration] Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce."

- "[T]his [Arbitration] Agreement applies to any dispute, past, present, or future, that the [Steak n Shake] may have against you or that you may have against: (1) [Steak n Shake; [and] (2) its officers, directors, principals, shareholders, members, owners, associates, or agents[.]"

- "All disputes covered by this [Arbitration] Agreement will be decided by a single arbitrator through final and binding arbitration and not by way of court or jury trial."

- "[T]his [Arbitration] Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration, including without limitation, to disputes arising out of or relating to the … Fair Labor Standards Act, … and state statutes or regulations, if any, addressing the same or similar subject matters, and all other federal or state legal claims … arising out of or relating to your … employment[.]"

- "[T]he Arbitrator, and not any court, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this [Arbitration] Agreement, including, but not limited to any claim that all or any part of this [Arbitration] Agreement is void or voidable. However, as stated in the "Class and Collective Action Waivers" section below, the preceding sentence does not apply to the Class Action Waiver and/or Collective Action Waiver."

- "[Steak n Shake] and you agree to bring any claim on an individual basis and not on a class and/or collective action basis. Accordingly, (a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action and the Arbitrator will have no authority to hear or preside over any such claim ("Class Action Waiver"). … (b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action and the Arbitrator will have no authority to hear or preside over any such claim ("Collective Action Waiver")."

Ex. A, Nevin Decl. ¶ 5 and its attached Ex. A-1, Arbitration Agreement ¶ 1 ("How this Agreement Applies."), ¶ 5 ("Class and Collective Action Waivers.").

The Arbitration Agreement's final paragraph, just above the area reflecting the Manager's review, acknowledgment, and signature of the Arbitration Agreement, states:

> By my eSignature below, I certify that I have read, fully understand and accept all terms of the foregoing statement, including without limitation, the terms of the Arbitration Agreement, which requires Steak N Shake and I to arbitrate covered

>claims. Please signify your acceptance by entering the information requested in the fields below.

Ex. A, Nevin Decl. ¶6 and its attached Ex. A-1, Arbitration Agreement ¶ 12 ("Validity of Electronic Signature.").

When Managers opted to acknowledge and sign the Arbitration Agreement, the Point-of-Sale system captured the Manager's agreement by automatically and electronically recording the Manager's ID number and name, the date, and the Manager's store number. Ex. A, Nevin Decl. ¶ 7. Between September 18, 2018, and September 18, 2021, a total of 908 Managers worked at corporate-owned Steak n Shake restaurants. Ex. A, Nevin Decl. ¶ 10. From December 17, 2019 and September 18, 2021,[4] 157 of the 908 Managers electronically signed or otherwise agreed to the Arbitration Agreement. Ex. A, Nevin Decl. ¶10 and its attached Ex. A-2 (Arbitration Agreements identifying Managers by employee identification number and otherwise).

---

[4] Plaintiffs' Amended Complaint clarifies they intend to include Managers who worked "during the liability period" which they claim is the three year period preceding the date the original Complaint was filed—*i.e.*, June 4, 2018 through June 4, 2021. Doc. 6, at ¶ 42. However, the FLSA's statute of limitations continues to run against individuals who do not join this action until such time as their consents to join are filed with this Court. 29 U.S.C. §256 ("… except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, … it shall be considered to be commenced in the case of any individual claimant—(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced."); *see also Deem v. Triplett Striping, Inc.*. Case No. 4:11–cv–147–TWP–WGH, 2012 WL 5353607, at *3 (S.D. Ind. Oct. 30, 2012 (revising the temporal scope of conditional certification and concluding "Defendant correctly points out that the limitation period extends back not from the filing of the complaint, but rather to the date that a party plaintiff opts in.")).

**ARGUMENTS AND AUTHORITIES**

<u>The FLSA's Purpose Includes Limiting the Scope of Collective Actions</u>

As recognized by the Supreme Court, the FLSA itself articulates its underlying purpose: to prohibit "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (citing 29 U.S.C. § 202(a)). Elaborating, the Seventh Circuit has recognized an employer's aversion to having employees work over 40 hours per week to avoid paying overtime is wholly consistent with FLSA's purposes:

> The first purpose was to prevent workers willing (maybe out of desperation, though this is no longer very likely) to work abnormally long hours from taking jobs away from workers who prefer to work shorter hours... . The second purpose was to spread work and thereby reduce unemployment, by requiring an employer to pay a penalty for using fewer workers to do the same amount of work as would be necessary if each worker worked a shorter week. The third purpose was to protect the overtime workers from themselves: long hours of work might impair their health or lead to more accidents (which might endanger other workers as well).

*Turner v. The Saloon, Ltd.*, 491 F.Supp.2d 767, 770 (N.D.Ill. 2007) (citing and quoting *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1176 (7th Cir. 1987)); *see also Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 510 (7th Cir. 2007) (concluding "[n]one of these purposes is engaged by this case."); *Jerzak v. City of South Bend*, 996 F.Supp. 840, 844-45 (N.D. Id. 1998).

Recently, the Supreme Court curtailed the misunderstanding the FLSA "pursues" its remedial purpose "at all costs." *See Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018) (cleaned up). Instead, "[I]t is quite mistaken to assume … that whatever might appear to further the statute's primary objective must be the law." *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1725 (2017) (cleaned up).

As with the FLSA itself, conditional collective action certification must be considered in its proper context. The undisputed purpose of the legislation requiring individuals to file consents

to join collective actions as "parties plaintiff"—captioned "Representative Actions Banned"—was to limit the scope of such actions. *See* 29 U.S.C. § 216(b); *Woods. V. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982); *Pridemore v. Jiffy Mini-Marts, Inc.*, Case No. 2:07-cv-0249-LJM-WGH, 2008 WL 5062754, *5 (S.D. Ind. Nov. 24, 2008) (noting 'Congress sought to limit litigation under FLSA with an opt-in class system.") (citation omitted)); *Rochlin v. Cincinnati Ins. Co.*, 2003 WL 21852341, *15 n. 6 (S.D. Ind. July 8, 2003) ("In 1947, as part of the 'Portal-to-Portal Act' to limit the scope of the FLSA, Congress amended 29 U.S.C. § 216(b) to limit collective actions by requiring that each employee give written consent to becoming a party.") (citations omitted)). Consequently, conditional certification as requested by Plaintiffs is not a foregone conclusion, particularly when certification sought is broader than alleged in the underlying pleadings.

Conditional Certification Standards

"Under the FLSA, an employee is permitted to maintain a collective action for 'unpaid overtime compensation … for and in behalf of himself … and other employees similarly situated.'" *Parra v. UHS Home Solutions, Inc.*, Case No. 1:19-cv-01638-TWP-DLP, 2020 WL 274819129, at *2 (S.D. Ind. May 27, 2020) (quoting U.S.C. § 216(b)). "District Court[s have] the discretion to authorize notice to similarly situated employees so that they may opt-in to a class." *Carter v. Indianapolis Power & Light Co.*, Case No. IP102CV01812SEBVSS, 2003 WL 23142183, at *7 (S.D. Ind. Dec. 23, 2003). When exercising this power, district courts do not hesitate to pare down the group or to deny conditional certification altogether. *Hollins v. Regency Corp.*, 867 F.3d 830, 834 (7th Cir. 2017) (citing Laura L. Ho, *Collective Action Basics*, 10 EMP. RIGHTS & EMP. POL'Y J. 427, 429 & n. 12 (2006) (citing cases)).

Courts in the Seventh Circuit generally engage in a two-step inquiry to determine if FLSA claims may proceed as a collective action. *Parra*, 2020 WL 274819129, at *2. At the first step, or the "notice stage," the Court conducts "an analysis of the pleadings and affidavits which have been submitted to determine whether notice should be given to potential class members."5 *Cheesman*, 2008 WL 2225617, at *5 (quoting *Carter*, 2003 WL 23142183, at *8). "The second step, which usually occurs after discovery has largely been completed, allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute." *Id.*

During the initial "notice stage," Plaintiffs must make only a threshold showing they are similarly situated to the employees on whose behalf they seek to pursue claims. *Parra*, 2020 WL 274819129, at *2 (citing *Coan v. Nightingale Home Healthcare, Inc.*, Case No. 1:05-CV-0101-DFH-TAB, 2005 WL 1799454, at *3 (S.D. Ind. June 29, 2005). However, "[t]he modest factual showing required at the first step of the proceedings may be lenient, but it is not a mere formality." *Allen v. Payday Loan Store of Ind., Inc.*, Case No. 2:13cv262, 2013 WL 6237852, at *4 (N.D. Ind. Dec. 3, 2013) (cleaned up).

At this first stage, courts consider evidence submitted by defendant-employers. In similar circumstances, another district court recently explained why it refused to limit its analysis to the

---

5 Plaintiffs imply this Court should conditionally certify their claims as a collective action because cases arising from the restaurant industry are routinely certified. Doc. 44, at 16. However, courts also routinely deny certification of claims against restauranteurs. *See e.g., Roberts v. Apple Sauce, Inc.*, 945 F.Supp.2d 995 (N.D. Ind. 2013); *Anderson v. P.F. Chang's Bistro, Inc.*, Case No. 16-14182, 2017 WL 3616475 (E.D. Mich. Aug. 23, 2017); *Becerra v. IM LLC-I*, Case No. 14-cv-2671 (ADS) (ARL), 2016 WL 8968978 (E.D.N.Y, Feb. 20, 2016); *Sodekson v. East Coast Restaurant & Nightclubs, LLC*, Case No. 4:15-CV-02711-RBH, 2016 WL 4613386 (D.S.C. Sept. 6, 2016). Nevertheless, the Court's analysis turns on the allegations and evidence in this case, not pleadings and allegations in other matters.

evidence presented by Plaintiffs in an action against a restaurant chain brought by Assistant Managers:

> The Court notes that, if [it] were to allow the case to proceed past stage one of the collective action certification process, the Court would have to consider this evidence in revisiting the similarly-situated inquiry on the Defendant[s'] motion to decertify at stage two. Because the Court has the evidence before it at stage one, the Court will consider it.

*Lovett v. SJAC Fulton Ind. I, LLC*, Case No. 1:14-CV-983-WSD, 2015 WL 3889719, at *11 (N.D. Ga. June 23, 2015) (citations and quotations omitted). Moreover, numerous decisions recognize declarations submitted by a defendant-employer opposing conditional certification are entitled to the same weight as declarations submitted by plaintiffs. *See Faust v. Comcast Cable Communications Mgmt., LLC*, No. CIV.A. WMN-10-2336, 2014 WL 3534008, at *12 n.13 (D. Md. July 15, 2014); *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, No. 11-CV-3121 (WJM), 2016 WL 1407743, at *6 (D.N.J. Apr. 11, 2016); *Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*, No. C11-1959RAJ, 2013 WL 1661483, at *6 (W.D. Wash. Apr. 17, 2013).

Importantly, when considering conditional collective action certification, courts do not determine the merits. *Scott v. NOW Courier, Inc.*, Case No. 1:-10-CV-971-SEB-TAB, 2012 WL 1072751, at *7 (S.D. Ind. Mar. 29, 2012); *see also Beeson v. C-Cat, Inc.*, Case No. 1:20-cv-00252-JPH-MPB2020 WL 7425339, *2 (S.D. Ind. Dec. 18, 2020). To be certain, Defendants are not asking this Court, in the context of the present motion, to dispose of the procedural and factual defenses it has raised—*i.e.*, (1) notice is improper to certain putative plaintiffs who have signed arbitration agreements, and (2) the inadequacy of Plaintiffs' pleadings regarding Franchise Partners' status as joint employers. Instead, Defendants only ask the Court to recognize the availability of these defenses, and such defenses render various putative plaintiffs dissimilarly situated.

<u>Plaintiffs are not Similarly Situated with Others Because Their Proposed Collective Action
is Broader than Alleged in Their Amended Complaint</u>

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). However, the text of the FLSA provides no further guidance, unhelpfully defining employment relationships in a circular fashion. *Compare* 29 U.S.C. § 203(e) (defining an "employee" as "any individual employed by an employer") *with* 29 U.S.C. § 203(g) (stating "employ" means to "suffer or permit to work"). Thus, courts assess the "economic reality" of the working relationship to determine whether an employment relationship exists under the FLSA. *Hollins v. Regency Corp.*, 867 F.3d 830, 835 (7th Cir. 2017); *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961); *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 785 (N.D. Ill. 2011). When conducting this inquiry, courts must consider the "totality of the circumstances" instead of applying "formalistic labels or common law concepts of agency." *Villareal*, 776 F.Supp.2d at 785 (citing *Goldberg*, 366 U.S. at 33). Whether an entity is an employer under the FLSA is a question of law. *Karr v. Strong Detective Agency Inc.*, 787 F.2d 1205, 1206–07 (7th Cir. 1986).

The FLSA contemplates an employee may have more than one employer at a time. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973). Indeed, federal regulations contemplate entities that share common control over an employee may be deemed "joint employers" under the FLSA. 29 C.F.R. § 791.2.

Since the FLSA's definition of an employer is empty, it is not surprising the concept of joint employment is equally hollow. Nevertheless, courts have frequently attempted to define the concept. Although there is no "one-size-fits-all" test, courts have adopted different standards when determining if a defendant exercised sufficient control to constitute an employer. *See Schneider*, 148 F. Supp. 3d at 696–97. For example, the Seventh Circuit has concluded a joint employer

relationship exists when each of the alleged employers exercises control over employees' working conditions. *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008).

In *Moldenhauer*, the Seventh acknowledged one version of the economic reality test, which asks if the alleged employer "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records.'[6] 536 F.3d, at 644. The court continued, '[a]lthough these factors are certainly relevant in deciding whether an employer-employee relationship exists, it would be foolhardy to suggest that these are the only relevant factors, or even the most important." *Id.*; *see also Schneider*, 148 F. Supp. 3d at 698 (noting all relevant facts should be considered, including the four commonly bundled ones); *Brunner v. Liautaud*, Case No. 14-c-5509, 2015 WL 1598106, at *3 (N.D. Ill. 2015) (stating the four *Moldenhauer* factors were "relevant, but not exhaustive, to the inquiry"). Meanwhile, other courts have rejected the four-factor test referenced in *Moldenhauer. See e.g.*, *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011) ("The issue of the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity."); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69, 72 (2d Cir. 2003) (concluding the district court erred by applying the four-factor test and remanding the case to consider "functional" control factors as well). Some courts have applied the "functional control" test factors:

> (1) whether the alleged employers' premises and equipment were used for the Plaintiffs' work; (2) whether the [defendants] had a business that could or did shift

---

[6] The United States Department of Labor's regulations addressing the joint employer concept reiterates these same four factors. *See* 29 C.F.R. § 791.2.

>from one putative joint employer to another; (3) the extent to which [the] Plaintiffs performed a discrete line job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one [defendant] to another without material changes; (5) the degree to which the alleged employers or their agents supervised [the] Plaintiffs' work; and (6) whether [the] Plaintiffs worked exclusively or predominantly for the alleged employers.

*Ocampo v. 455 Hospitality LLC,* 2016 WL 4926204, at *6 (S.D.N.Y. 2016) (quoting *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 205–06 (S.D.N.Y. 2014)).

In their Amended Complaint, Plaintiffs do not allege Steak n Shake's "Franchise Partners" are their employers. *See Adair v. Wisconsin Bell,* Case No. 08-C-280, 2008 WL 4224360, *5 (E.D.Wisc. Sept. 11, 2008) (denying conditional collective action certification and stating, "[b]ut, of course, it does matter whether the allegations of the complaint are true. It is to the complaint, after all, that the defendant looks for notice of the claim asserted against it.") Plaintiffs have functionally deprived Defendants the opportunity to raise defenses to such allegations, such as Plaintiffs lacking standing to pursue claims against the "Franchise Partners," failing to join all necessary parties, the absence of personal jurisdiction, etc. Although that deficiency is enough to sink her claim, the Court need not reach the merits of this issue to decide Plaintiffs' allegations do not suffice to justify conditional collective action certification of "Franchise Partners'" Managers.

Plaintiffs do not even mention "Franchise Partners," much less make boilerplate allegations Defendants and Steak n Shake's "Franchise Partners" are joint employers. Instead, the sole alleged employers are Defendants' "corporate owned" restaurants. Consequently, Plaintiffs have not given Defendants fair notice of their joint employer theory which they raised for the first time in their motion seeking conditional collective action certification. *Ivery v. RMH Franchise Corp.,* 280 F.Supp.3d 1121, 1129-32 (N.D.Ill. 2017); *Carter v. Indiana State Fair Com'n*, Case No. 1:11–cv–00852–TWP–TAB, 2012 WL 4481348, at *4 (S.D.Ind. Sept. 28, 2012) (denying broader collective action than sought by plaintiff because requested scope was not defined in operative

complaint); *see also Heuberger v. Smith*, No. 16 C 386-JD-JEM, 2017 WL 3923271, at *11–15 (N.D. Ind. Sept. 7, 2017); *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (noting, in dicta, plaintiff's "actual and direct employer is an essential element of notice pleading" in a FLSA); *Davis v. Abington Mem'l Hosp.*, 817 F.Supp.2d 556, 563–64 (E.D. Pa. 2011) (rejecting joint employment theory where complaint did not plead facts identifying which defendants primarily employed each plaintiff).

As one court has explained, several others have recognized there is no room for "game-playing omissions of plainly relevant detail" concerning a plaintiff's direct employer. *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 10 n.10 (1st Cir. 2012). And the detail provided by Defendants further demonstrates the viability of their objections to Plaintiffs' pleadings deficiencies. More specifically, the only evidence presently before the case reveals the absence of allegations about joint employment is glaring; the Franchise Partners are undeniably independently and separately owned and operated. Ex. B, Evens Decl. ¶¶ 3-8.

Consequently, Plaintiffs' requested conditional collective action certification should not extend to Steak n Shake's Franchise Partners' Managers who were nowhere referenced in their underlying pleadings.

<u>Plaintiffs are not Similarly Situated with Putative Plaintiffs<br>Who Signed Arbitration Agreements</u>

The Supreme Court has determined the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), applies to employment agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The plain language of the FAA regards arbitration agreements as "valid, irrevocable, and enforceable," and the Supreme Court requires courts to "rigorously enforce agreements to arbitrate." 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "[T]he FAA 'is a congressional declaration of a liberal policy favoring arbitration agreements' and 'that

question of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730-31 (7th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). As the Seventh Circuit directed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bigger v. Facebook, Inc.,* 947 F.3d 1043, 1051 (7th Cir. 2020) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

To compel arbitration under the FAA, "a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Courts must order arbitration of claims "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "In the absence of any express provision excluding a particular grievance from arbitration … only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. (quotation omitted).

As the Seventh Circuit Court of Appeals has determined, "a court may not authorize [FLSA collective action] notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action. And the court must give the defendant an opportunity to make that showing." *Bigger,* 947 F.3d, at 1050. More specifically, "[t]he court may not authorize notice to any employee whom the employer shows entered a valid arbitration agreement, unless the record reveals that nothing in the agreement would prohibit that employee from participating in the action." *Id.* at 1051 (citing *In re JPMorgan Chase & Co.*, 916 F.3d 494,

502‑03 (5th Cir. 2019)). The Seventh Circuit justified this conclusion by citing the court's "obligations to maintain neutrality and to shield against abuse of the collective-action device." *Id*. As the court noted:

> [I]f the defendant provides proof—or is denied the opportunity to provide proof—that 'arbitration employees' are among the proposed notice recipients, then sending notice to those individuals may at least appear to predominantly inflate settlement pressure instead of inform employees of an action in which they can resolve common issues. Also, in that situation, the risk is high that the notice will appear to facilitate abuse of the collective-action device and thus place a judicial thumb on the plaintiff's side of the case.

*Id*.

"The employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Id.*; c*f. In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019).

To balance the parties' respective interests, when a defendant opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements, as Defendants do here, the Seventh Circuit outlined the following "specific steps" "the trial court must take":

> First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.
>
> If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements.
>
> But if a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged "arbitration employees"—the court must permit the parties to submit additional evidence on the agreements' existence and validity.

*Id*.

49045354.v2-OGLETREE

Although Plaintiffs may contest the viability of the applicable Arbitration Agreements, Defendants' evidence reveals their justification in asserting its objections to issuing Plaintiffs' proposed notice.[7] Ex. A, Nevin Decl. ¶¶ 3-7, 10, and its attached Exs. A-1 and A-2. To the extent Plaintiffs contest Defendants' objections to notice issuing to those who signed Arbitration Agreements, Defendants are prepared, and willing, to present any additional evidence the Court may consider. Until such time, though, Defendants respectfully suggest notice should not issue to those putative plaintiffs who signed Arbitration Agreements requiring them, and Defendants, to individually arbitrate their claims against one another.

## CONCLUSION

Plaintiffs' requested conditional collective action certification reveals the dangers of such early motions based solely on the allegations in the underlying pleadings. In their motion, Plaintiffs make no mention of the enforceable Arbitration Agreements between Defendants and many of those to whom Plaintiffs want to send notice of this action. Likewise, in the operative Complaint, Plaintiffs do not even mention Steak n Shake's Franchise partners, nor do they allege any facts suggesting the Franchise Partners and Steak n Shake are joint employers, thus depriving Defendants of the basic notice they deserve to defend themselves in this action. For these reasons, as well as the reasons noted above, including the underlying purpose of the FLSA and its limiting amendments, Defendants respectfully request the Court's order denying Plaintiffs' motion to send notice to putative plaintiffs.

---

[7] If the Court authorizes notice to any putative plaintiffs, Defendants suggest the parties should meet and confer to narrow, or abrogate, any potential disputes regarding the proposed notice.

Respectfully Submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Patrick F. Hulla*
Patrick F. Hulla, admitted Pro Hac Vice
Darin P. Shreves, admitted Pro Hac Vice
4520 Main Street, Suite 400
Kansas City, MO  64111
Telephone:  816-471-1301
Facsimile:  816-471-1303
patrick.hulla@ogletree.com
darin.shreves@ogletree.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Patrick F. Hulla*