UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALICIA WILMOTH on behalf of herself and all others similarly situated, BRANDON SCOTT, and ALBERT DIANA, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:21-cv-01507-TWP-MG ) |
| STEAK N SHAKE, INC. an Indiana Corporation, and SARDAR BIGLARI, | ) ) ) |
| Defendants. | ) ) |

**ENTRY ON PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

This matter is before the Court on a Motion for Conditional Certification filed by Plaintiffs, Alicia Wilmoth, Brandon Scott, and Albert Diana (collectively, "Plaintiffs") (Filing No. 43). Plaintiffs initiated this action to recover overtime wages for themselves and other individuals who were employed in salaried positions by Defendants Steak N Shake, Inc., and Sardar Biglari (together, "Steak N Shake") and were allegedly unpaid or underpaid by Steak N Shake in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiffs ask the Court to grant conditional certification of a proposed Collective Action and to direct Steak N Shake to produce certain information regarding potential opt-in plaintiffs. For the reasons that follow, the Motion is **granted in part and denied in part**.

**I.     BACKGROUND**

Defendant Steak N Shake, Inc., is an Indiana corporation that operates certain Steak N Shake restaurants throughout the United States (Filing No. 42 at ¶ 4). Steak N Shake is a wholly owned subsidiary of Biglari Holdings, Inc. *Id.* Defendant Sadar Biglari is the President and Chief Executive Officer of Steak N Shake, Inc. and the Chairman and CEO of Biglari Holdings, Inc. *Id.*

at ¶ 5.  During the relevant time, Steak N Shake owned and operated approximately two hundred restaurants across fourteen states (Filing No. 44-2 at ¶ 2).

Steak N Shake's restaurants were modeled to be staffed with several managerial positions including "General Managers," "Restaurant Managers," and other "Managers" (collectively, "Managers") (Filing No. 44-3 through Filing No. 44-10 at ¶ 2; Filing No. 44-11 at 5:7–15). Steak N Shake maintained a uniform job description for all Managers, which designated Managers as exempt from overtime pay (Filing No. 44-3 through Filing No. 44-10 at ¶¶ 2, 5; Filing No. 44-11 at 22:18–23:10; Filing No. 44-18).  Steak N Shake also employed individuals in several nonexempt positions to perform production and service manual-labor duties (Filing No. 44-2 at ¶ 4; Filing No. 44-3 through Filing No. 44-10 at ¶ 3; Filing No. 44-11 at 11:8–18; Filing No. 44-12 at 45:7–13).

Plaintiffs each worked for Steak N Shake as Managers, but they did not have authority to hire or fire employees, did not decide employee pay rates, did not conduct employee performance reviews, did not decide employee pay raises or promotions, and had little to no authority to discipline employees.  *Id.* at ¶¶ 12–13.  Plaintiffs spent most of their time performing the same duties as Steak N Shake' nonexempt employees, but they considered those duties to be the most important part of their jobs as Managers because they believed the restaurants would have failed if they failed to perform those duties.  *Id.* at ¶ 6.  While employed as Managers, Plaintiffs were paid a set amount for their work regardless of the weekly hours they worked (Filing No. 44-3 through Filing No. 44-10 at ¶ 5).  They were regularly scheduled to, and did, work more than forty hours per work week.  *Id.* at ¶ 8.  They were not paid overtime for hours worked in excess of forty per work week.  *Id.* at ¶ 5.

On June 4, 2021, Plaintiffs initiated this cause of action on behalf of themselves and other Steak N Shake employees, alleging that Steak N Shake violated the FLSA by willfully failing to

pay their Managers for all overtime hours worked over forty in a work week (Filing No. 1). On September 14, 2021, Plaintiffs filed a Motion for Conditional Certification (Filing No. 43). The Motion requests conditional certification of their FLSA claim; seeks approval to disseminate notices and consent forms by U.S. Mail, email, website, and text message, with one reminder; and seeks an order directing Steak N Shake to produce the names, addresses, telephone numbers, personal email addresses, and partial social security numbers of each potential member of the collective action. *Id.* Steak N Shake filed their opposition to Plaintiffs' Motion on October 29, 2021 (Filing No. 54).

On November 16, 2021, the parties filed a Joint Stipulation in which the parties consented to the conditional certification of an agreed-upon collective and the dissemination of an agreed notice and consent form by U.S. Mail (Filing No. 61; Filing No. 61-1). The Court acknowledged the Joint Stipulation on November 17, 2021 (Filing No. 62). The parties still dispute Plaintiffs' request to send notices by email, website, and text messaging, and to send a reminder. The parties have filed supplementary briefing on these remaining disputes (Filing No. 65; Filing No. 66).

## II.     LEGAL STANDARD

Under the FLSA, an employee is permitted to maintain a collective action for "unpaid overtime compensation . . . for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). "Such a collective action differs significantly from a Rule 23 class action. Potential class members in a collective action must affirmatively *opt-in* to be bound, while in a Rule 23 action they must *opt out* [to] not be bound." *Cheesman v. Nexstar Broad. Grp., Inc.*, No. 07CV360, 2008 WL 2225617, at *2 (S.D. Ind. May 27, 2008) (emphasis in original). The standards governing class certification under Rule 23 are not applicable to FLSA collective actions. *Id.*

3

Courts in the Seventh Circuit engage in a two-step inquiry to determine whether an FLSA action may proceed as a collective action. *Id.* The first step is called the "notice stage" and "involves an analysis of the pleadings and affidavits which have been submitted to determine whether notice should be given to potential class members." *Id.* (quoting *Carter v. Indianapolis Power & Light Co.*, No. IP102CV01812SEBVSS, 2003 WL 23142183, at *3 (S.D. Ind. Dec. 23, 2003)). "The second step, which usually occurs after discovery has largely been completed, allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute." *Id.*

During the initial "notice stage," plaintiffs do not have to prove their entire case. Rather, the plaintiffs must make only a threshold showing that they are similarly situated to the employees on whose behalf they seek to pursue claims. *Coan v. Nightingale Home Healthcare, Inc.*, No. 05-CV-0101, 2005 WL 1799454, at *1 (S.D. Ind. June 29, 2005). This threshold showing is "relatively modest." *Id.* "[T]o meet their burden, plaintiffs must provide evidence via an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Id.* Although the first step of certification does not impose a high burden, "'this does not mean that the "modest factual showing" is a mere formality.'" *Simmons v. Broadway Home Improvement Inc.*, No. 14-cv-483, 2014 WL 3734510, *1 (S.D. Ind. July 28, 2014) (quoting *Campbell v. Advantage Sales & Mktg., LLC*, No. 09-cv-1430 2010 WL 3326752, at *4 (S.D. Ind. Aug. 24, 2010)). The first step serves as an important and functional step in the certification process because it would be a waste of the court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.

If a court grants conditional certification of a collective action, it "has discretion to authorize notice to similarly situated employees." *Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 958 (S.D. Ind. 2016) (citing *inter alia Alvarez v. City of Chicago*, 605 F.3d at 449 (7th Cir. 2010)). The court also has discretion "to prescribe the form, manner, and timing of notice to ensure that putative members receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Weninger v. Gen. Mills Operations LLC*, 344 F. Supp. 3d 1005, 1012 (E.D. Wis. 2018) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

### III.    DISCUSSION

**A.    Conditional Certification**

Among other things, the FLSA prohibits employers from working their employees more than forty hours in a work week without compensating the employees overtime wages at a rate of at least time and a half for hours worked in excess of forty hours. 29 U.S.C. §§ 207, 215(a)(2). "The FLSA exempts from overtime pay coverage those employed in a 'bona fide executive, administrative, or professional capacity.'" *Mullins v. Target Corp.*, No. 09 C 7573, 2011 WL 1399262, at *4 (N.D. Ill. Apr. 13, 2011) (quoting 29 U.S.C. § 213(a)(1)). The FLSA provides a procedural mechanism whereby employees may litigate a collective action on behalf of similarly situated employees. *See* 29 U.S.C. § 216(b).

In their Motion, Plaintiffs ask the Court to conditionally certify a collective action for their FLSA claim, arguing that they are similarly situated to other Managers who were denied overtime wages by Steak N Shake. In response, Steak N Shake asserts that Plaintiffs' proposed collective action would improperly include Managers who had signed arbitration agreements or who had worked exclusively at restaurant locations that are owned and operated by franchisees or franchise partners, separately and independently from Steak N Shake, Inc. ("Franchise Locations"). The

parties have resolved those disputes for purposes of conditional certification and stipulated to the conditional certification of a collective action that excludes Managers who signed arbitration agreements (with limited exceptions) and Managers who worked exclusively at Franchise Locations (Filing No. 61).

Plaintiffs have satisfied the modest factual burden to show that they are similarly situated to the potential opt-in plaintiffs identified in the Joint Stipulation. In support of their Motion, Plaintiffs offer the declarations of five opt-in plaintiffs who all served as Managers, and the earlier trial testimony of three former or current Managers. As shown by the declarations and trial testimony, each of the Manager's job descriptions and experiences were similar. They regularly worked more than forty hours each work week, regularly performed the duties of nonexempt employees, and they each were not paid overtime wages. Each of them was classified by Steak N Shake as exempt from the overtime provisions of the FLSA (Filing No. 44 at 4, ¶¶ 5–12). Given that Steak N Shake have stipulated to the conditional certification of the collective action as described in the Joint Stipulation, the Court finds no reason to deny conditional certification. Accordingly, the Court **approves** the parties' Joint Stipulation and grants conditional certification for the FLSA claim as a collective action for the following collective[1] (the "Collective"):

> All persons who worked or will work as "Managers" for Steak N Shake at all corporate owned "Steak N Shake" restaurants located in the United States at any time within three years prior to the date of this Entry, but excluding from the collective: (1) persons who consented to join and participated in the settlement

---

[1] The parties' Joint Stipulation contains some errors that make it difficult to identify the agreed-upon collective. These errors include, but are not limited to, a reference to a nonexistent "paragraph c," the use of the defined terms "Franchise Partnership" and "Named or Opt-In Plaintiffs" without definitions, and cross-references to overlapping or undefined time periods including "the liability period," "three years prior to the filing of the Complaint," "the covered period of time," "three years from the date of the Order approving this Stipulation," and "three years from the date of this Stipulation" (Filing No. 61 at ¶¶ 1, 4). After a thorough review of the parties' other filings, the Court has interpreted the Joint Stipulation as identifying the Collective defined in this Entry. If the collective described in this Entry does not accurately reflect the parties' agreement, then the parties shall file an amended stipulation more clearly defining the agreed-upon collective. The Court expects that in the future, the parties will more carefully review their filings to avoid this type of unnecessary strain on judicial resources.

agreement reached in *Drake v. Steak N Shake, Inc.*, 4:14-cv-1535-JAR (E.D. Mo.) and *Clendenen v. Steak N Shake, Inc.*, 4:17-cv-1506 (E.D. Mo); (2) the one hundred fifty-seven persons identified in Steak N Shake' Response to Plaintiffs' Motion for Conditional Certification (Filing No. 54 at 6; Filing No. 54-3), except that any of those one hundred fifty-seven persons who were named plaintiffs or opt-in plaintiffs in this case as of the filing of the Joint Stipulation (Filing No. 61) shall not be excluded from the collective; and (3) any person who worked as a Manager at Franchise Locations only at any time within three years prior to the date of this Entry.

The Court now turns to the proposed notice and method of dissemination.

B.   **Proposed Notice and Method of Dissemination**

The parties have stipulated to the contents of a Notification to Potential Class Members ("Notice") and Consent to Become a Party Plaintiff ("Consent Form") (Filing No. 61-1), which the Court finds to be appropriate, accurate, and in furtherance of the goals of the FLSA. The stipulated Notice provides for a sixty-day response period, which the Court likewise finds to be appropriate. The Court therefore **approves** the parties' Joint Stipulation as to the contents of the Notice and Consent Form, subject to certain modifications identified at the end of this Entry, as well as the sixty-day response period.

The only remaining disputes concern the method of dissemination. Plaintiffs request permission to send the Notice and Consent Form by U.S. Mail, email, website, and text message, with one reminder postcard to be sent twenty-one days before the Collective's response deadline (Filing No. 61 at 3). Steak N Shake only consent to dissemination by U.S. Mail one time and oppose Plaintiffs' other requests.

Plaintiffs argue that notice by email, website, and text message are becoming increasingly common and are needed to ensure effective notice to low-income food industry workers, who may frequently change residences (Filing No. 44 at 20–21). Plaintiffs contend that a reminder is appropriate to ensure that Collective members receive notice of their right to join or not join this litigation (Filing No. 66 at 5). Steak N Shake respond that the additional methods of dissemination

7

would not only be redundant but would also constitute active solicitation of potential opt-in plaintiffs and would allow Plaintiffs to contact Collective members without Court oversight (Filing No. 65 at 1). After reviewing the parties' briefing, the Court **approves** the parties' stipulation to disseminate the Notice and Consent Form by U.S. Mail and **grants** Plaintiffs' request to disseminate the Notice and Consent Form by email and website, with one reminder, but the Court **denies** Plaintiffs' request to disseminate the Notice and Consent Form by text message and their request for production of Collective members' partial social security numbers.

### 1. Email

As Plaintiffs accurately note, notice by email has become ubiquitous in this District and throughout the Seventh Circuit. *See, e.g.*, *Cobb v. Anthem Inc.*, No. 20-cv-820, 2020 WL 4351349, at *4 (S.D. Ind. July 27, 2020) (permitting notice by mail, website, email, and a reminder email); *Slack v. Xcess, Inc.*, No. 19-cv-160, 2020 WL 12738895, at *3 (S.D. Ind. July 9, 2020) (permitting notice by mail, email, and text, with a reminder notice); *Imel v. DC Constr. Servs., Inc.*, No. 19-cv-634, 2020 WL 2840022, at *7 (S.D. Ind. June 1, 2020) (directing notice via mail and email); *Gallant v. Arrow Consultation Servs., Inc.*, No. 1:19-cv-925, 2019 WL 13081604, at *2 (S.D. Ind. Apr. 8, 2019) (permitting notice by email and reminder postcard and email); *Patzfahl v. FSM ZA, LLC*, No. 20-C-1202, 2021 WL 4912883, at *5 (E.D. Wis. Oct. 21, 2021) (citing recent cases permitting notice by email); *Kujat v. Roundy's Supermarkets Inc.*, 2019 WL 1953107, at *4 (N.D. Ill. May 2, 2019) ("Courts in this District routinely approve notice distribution by both U.S. mail and email, since email is a ubiquitous means of communication, and individuals often retain the same email address despite multiple changes in their mailing addresses."); *see also, e.g.*, *Harding v. Steak N Shake, Inc.*, No. 21-cv-1212, 2022 WL 658955, at *4 (N.D. Ohio Feb. 11, 2022) (permitting notice by email).

The Court also agrees with Plaintiffs that the use of email is more effective than mail when corresponding with individuals in the food service industry, who may regularly change physical addresses but maintain the same email address. *See Knox*, 208 F. Supp. 3d at 963–64 ("Steak N Shake do not convince the Court that email is unnecessary in this case. Rather, as Plaintiffs contend, email is appropriate in this case because Plaintiffs seek to issue notice to a mobile group of servers and bartenders that are more likely to receive and respond to email than U.S. mail."); *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020) ("Providing servers with electronic notice is especially important given the high turnover rate of employees in the restaurant industry."); *Alverson v. BL Rest. Operations LLC*, No. 16-CV-849, 2018 WL 1324952, at *2 (W.D. Tex. Mar. 12, 2018) (approving notice by email "especially given email's prevalence these days and the transient nature of BL's [restaurant] workforce," but denying request for notice by text).

Steak N Shake have not cited any recent caselaw convincing the Court that notice by email would be unhelpful or inappropriate here. The Court **grants** Plaintiffs' request to send the stipulated Notice and Consent Form ([Filing No. 61-1](Filing No. 61-1)) by email to the Collective and their request for production of Collective members' personal email addresses.

### 2. Website

Plaintiffs also request permission to create a website that contains the stipulated Notice and Consent Form and through which Collective members may submit electronic consent forms. The use of public websites is likewise commonplace in this Circuit and serves the purposes of the FLSA. *See Knox*, 208 F. Supp. 3d at 964 ("As with email, communication through websites is common. . . . Opening a public website improves access to consent forms, and the Court is unaware of any actual (or anecdotal) evidence that a case website with misleading comments circulates, resulting in artificially increased case participation."); *Cobb*, 2020 WL 4351349, at *4 (directing

9

third-party administrator to establish website displaying text of notice and consent form and accepting electronically submitted consent forms); *Gallant*, 2019 WL 13081604, at *2 (permitting submission of written consents through public website); *see Watt v. Fox Rest. Venture, LLC*, No. 17-cv-2104, 2019 WL 698058, at *9 (C.D. Ill. Feb. 20, 2019) (allowing plaintiffs to establish website with notice and consent form); *Kujat*, 2019 WL 1953107, at *5 (directing third-party administrator to maintain website containing notice and consent form and allowing for electronic submission of consent forms).

Accordingly, the Court **grants** Plaintiffs' request for authorization to create a public website, which shall contain only the stipulated Notice and Consent Form (Filing No. 61-1), and which shall permit the return of consent forms electronically.

### 3. Text Messaging

Plaintiffs further seek to disseminate the Notice and Consent Form to the Collective via text message. This method is far less accepted than email or public websites and would require the disclosure of highly personal information. Courts have regularly denied similar requests absent a specific showing of need, often citing privacy concerns as a reason for denial. *See, e.g.*, *Monroe v. Elmer Buchta Trucking, LLC*, No. 13-cv-132, 2020 WL 12631861, at *6 (S.D. Ind. Feb. 27, 2020) (denying request for notice by text); *Clugston v. Shamrock Cartage & Spotting Servs.*, No. 13-cv-01047, 2014 WL 5502455, at *5–6 (S.D. Ind. Oct. 30, 2014) (denying request for telephone numbers absent showing of "special need for disclosure"); *Carter v. Ind. State Fair Comm'n*, No. 11-cv-852, 2012 WL 4481348, at *4 (S.D. Ind. Sept. 28, 2012) (excluding telephone numbers from production for opt-in plaintiff notice "unless Plaintiffs can sufficiently demonstrate this information is required to locate certain putative plaintiffs"); *Piazza v. New Albertsons, LP*, No. 20-cv-3187, 2021 WL 365771, at *8 (N.D. Ill. Feb. 3, 2021) (denying request for notice by text message) (citing cases denying request for notice by text message); *DePyper v. Roundy's*

*Supermarkets, Inc.*, No. 20-cv-2317, 2020 WL 6565225, at *4–5 (N.D. Ill. Nov. 9, 2020) (permitting notice by text message only where notice by mail and email have failed); *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018) (denying request for notice by text message as "unnecessary and overly intrusive," "[a]bsent some showing that U.S. mail and email notice will not reach prospective class members"); *see also Harding*, 2022 WL 658955, at *4 (denying request for notice by text message); *Randall v. Integrated Commc'n Serv., Inc.*, No. , 2021 WL 2328373, at *5 (W.D. Wash. June 8, 2021) (denying request for notice by text because "text messages are unnecessary and overly intrusive given that putative collective members will also receive mail and email notice" and "Plaintiffs have not demonstrated why mail and email notices should be insufficient to reach putative collective members"); *see also Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 212 (D.D.C. 2018) ("[T]he Court is concerned that, even in the social-media era, unsolicited phone calls and text messages remain a significant intrusion of individuals' privacy." (quotation marks and citation omitted)).

Courts have occasionally permitted the use of text messaging where potential opt-in plaintiffs regularly travel for work or work in remote locations, or where plaintiffs' counsel has submitted evidence showing a need or preference for text messaging, none of which is the case here. *See, e.g.*, *Perizes v. Dietitians at Home, Inc.*, No. 19-cv-740, 2021 WL 3849646, at *8 (N.D. Ill. Aug. 27, 2021) ("[T]he potential class members spend much of their work weeks travelling between patients' homes"); *Rossman v. EN Eng'g, LLC*, No. 19-cv-5768, 2020 WL 5253861, at *6 (N.D. Ill. Sept. 3, 2020) ("[P]otential class members are assigned to jobsites all over the country and oftentimes in remote locations . . . ."); *Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898 (N.D. Ill. 2020) ("[Potential plaintiffs] spend much of their work weeks travelling between patient's homes."); *Waller v. AFNI, Inc.*, No. 20-cv-1080, 2020 WL 6694298, at *5 (C.D.

Ill. Nov. 13, 2020) ("Plaintiffs have shown through their declarations as to why text message notice is appropriate . . . ."); *Brashier v. Quincy Prop., LLC*, No. 17-CV-3022, 2018 WL 1934069, at *6 (C.D. Ill. Apr. 24, 2018) ("Steak N Shake' work force is transitory, and the Plaintiffs themselves lived at the motels while they worked for Steak N Shake.").

The Court also recognizes the transitory nature of low-income restaurant workers, which other courts have held justifies the use of text messaging. *Yuefeng Shi v. TL & CG Inc.*, No. 19-CV-8502, 2020 WL 4586359, at *5 (S.D.N.Y. Aug. 10, 2020) (noting the high turnover rate of defendant's restaurant employees and permitting use of text messaging); *Belt*, 2020 WL 3829026, at *9; *Alverson*, 2018 WL 1324952, at *2; *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (permitting notice via text "given the high turnover characteristic of the restaurant industry").  However, Plaintiffs here offer no evidence that text messaging is needed in light of the use of U.S. Mail, email, a website, and a reminder, or that their need to use text messaging would outweigh Collective members' privacy interests. Accordingly, the Court **denies** Plaintiffs' request to send notice by text message and their request for Collective members' personal telephone numbers.  Plaintiffs may later request this information if the first attempts at notice via U.S. Mail, email, and website fail and if needed to contact Collective members.

    4.    **<u>Reminder Notice</u>**

Like with email, reminder notices have gained popularity in this District and Circuit. Steak N Shake argue a reminder notice ventures from notice into solicitation, but the Court finds that a "notice is just as easily ignored as it is read. Regardless [of] how many times potential class members receive this information, it is their responsibility to act as they see fit and it is their decision to join or not join." *Knox*, 208 F. Supp. 3d at 964.  The Court here is "unconvinced that any harm will result from potential class members being informed of their rights twice.  Deadline

reminders are common place and will not appear to endorse the merits of the case." *Id.* at 964–65; *see, e.g.*, *Slack*, 2020 WL 12738895, at *3 (permitting notice by mail, email, and text, with a reminder); *Cobb*, 2020 WL 4351349, at *4 (permitting notice by mail, email, website, with a reminder); *Gallant*, 2019 WL 13081604, at *2 (finding reminder notices to be "appropriate and in furtherance of the goals of FLSA notice"); *Swarthout v. Ryla Teleservices, Inc.*, No. 11-CV-21, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (permitting one reminder letter); *see also, e.g.*, *Quinn v. Auto Injury Sols., Inc.*, No. 20-cv-1966, 2020 WL 9397520, at *5 (N.D. Ill. Nov. 24, 2020) ("Authorizing a reminder is also common practice within this District and the court sees no reason to not allow one here.") (citation omitted); *Fries v. Residential Home Health, LLC*, No. 16 CV 3727, 2017 WL 11612908, at *3 (N.D. Ill. Aug. 23, 2017) (allowing reminder notice, concluding there was "no reason why any communication from Plaintiffs' counsel—not the Court—is likely to be interpreted as the Court supporting Plaintiffs' position"). Steak N Shake cite several cases showing that reminders are not always permitted by Seventh Circuit courts. *See, e.g.*, *Piazza*, 2021 WL 365771, at *8; *DePyper*, 2020 WL 6565225, at *4–5; *Bigger v. Facebook, Inc.*, 375 F. Supp. 3d 1007, 1024 (N.D. Ill. 2019); *Watt*, 2019 WL 698058, at *9; *Witteman v. Wis. Bell, Inc.*, No. 09-cv-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010). But consistent with the precedent in this District and the purposes of FLSA collective action notice, the Court finds that one reminder is appropriate.

Further, contrary to Steak N Shake' assertion, the Court does not believe that by providing Plaintiffs with Collective members' email addresses and allowing them to send notice by U.S. Mail and email with one reminder postcard, and to create a public website, the Court would be allowing Plaintiffs to contact potential plaintiffs "at any time, without any limitations to the content or method of contact" (Filing No. 65 at 4). This Entry strictly limits the contents of Plaintiffs' emails

to the Collective and its website to the stipulated Notice and Consent Form, and the Court will limit the contents of the reminder to only Court-approved content. Plaintiffs have also confirmed that they "will not initiate any contact with the putative class members beyond the actual agreed upon notice itself" (Filing No. 66 at 6).

The Court **grants** Plaintiffs' request to send one reminder postcard via U.S. Mail and email twenty-one days before the response deadline to any members of the Collective who have not already responded. The Court notes that Plaintiffs have not yet submitted a proposed reminder to the Court for approval but must do so before sending the reminder.

### 5. Partial Social Security Numbers

Plaintiffs request production of the last four digits of Collective members' social security numbers so Plaintiffs can identify current addresses for Collective members' whose mail is returned as undeliverable. Steak N Shake do not indicate whether they oppose this request, but the Court nevertheless **denies** it.

Social security numbers are "highly sensitive and private information. Providing sensitive personal data such as a social security number is not to be done lightly." *Heuberger v. Smith*, No. 16-CV-386, 2017 WL 3923271, at *8 (N.D. Ind. Sept. 7, 2017) (alteration, quotation marks, and citations omitted). Courts have routinely denied similar requests for social security numbers at the conditional certification stage. *See, e.g.*, *Monroe*, 2020 WL 12631861, at *6; *Gallant*, 2019 WL 13081604, at *2; *Craft v. Ray's, LLC*, No. 08-cv-627, 2008 WL 4810546, at *3 (S.D. Ind. Oct. 29, 2008); *Dennis*, 438 F. Supp. 3d at 902 (denying request for social security numbers); *Kujat*, 2019 WL 1953107, at *4 ("The production of social security numbers requires greater scrutiny. Social security numbers are sensitive personal data that should not be released unless necessary." (quotation marks and citation omitted)). The Court sees no reason to compel production of potential plaintiffs' social security numbers at this stage, especially because Plaintiffs will also be

able to reach Collective members through email and a website. However, Plaintiffs may later request this information if the first attempts at notice via U.S. Mail, email, and website fail and if needed to contact Collective members.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Conditional Certification is **GRANTED in part and DENIED in part**. Specifically, the Court orders:

The Notice and Consent Form submitted by the parties at [Filing No. 61-1](Filing No. 61-1) may be issued to members of the Collective with the following modifications:

1. In the second paragraph of Section 2 of the Notice ("What is this Lawsuit About?"), replace "Steak n Shake" with "Steak N Shake";

2. In the second paragraph of Section 5 of the Notice ("How Can I Participate & Effect of Joining the Lawsuit?"), replace "SNS" with "Steak N Shake"; and

3. In the last three lines of the Consent Form, insert Plaintiffs' counsel's fax number and email address to be used for returning Consent Forms.

Within **fourteen (14) days** of this Entry, Steak N Shake shall provide to Plaintiffs a spreadsheet containing the names, last known home addresses (including zip codes), last known personal email addresses, and employment dates (in Microsoft Office Excel format) of all members of the Collective (the "Collective Information").

Within **seven (7) days** of Steak N Shake providing the Collective Information, Plaintiffs shall send the Notice and Consent Form to the Collective by U.S. Mail (first-class or overnight), along with a self-addressed, postage pre-paid return envelope, and by email.

On or before the date the Notice is first sent to the Collective, Plaintiffs' counsel shall establish a public website—separate from and unaffiliated with Plaintiffs' counsel's website(s)—

that contains only the stipulated Notice and Consent Form and that permits the return of electronic consent forms.

Within **ten (10) days** of this Entry, the parties shall confer and submit to the Court proposed language for the reminder postcard to be issued by U.S. Mail (first-class or overnight) and email. In drafting the proposed language, the parties should "be scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche Inc.*, 493 U.S. at 174.

**Twenty-one (21) days** before the Collective's deadline to return the Consent Form, Plaintiffs shall send the Court-approved reminder postcard by U.S. Mail (first-class or overnight delivery) and email to any Collective member who has not responded to the Notice. Plaintiffs may send the reminder postcard only after obtaining Court approval of its contents.

Members of the Collective shall have **sixty (60) days** after the deadline for mailing the Notice to return a Consent Form to opt-in to this litigation, unless the parties agree to permit late filings or good cause can be shown as to why the form was not returned prior to the deadline.

**SO ORDERED**.

Date: 6/3/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Daniel W. Craig
DONELON, PC
dan@donelonpc.com

Brendan J. Donelon
DONELON, P.C.
brendan@donelonpc.com

R. Andrew Santillo
WINEBRAKE & SANTILLO, LLC
asantillo@winebrakelaw.com

Peter Winebrake
WINEBRAKE & SANTILLO, LLC
pwinebrake@winebrakelaw.com

Patrick F. Hulla
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Kansas City)
patrick.hulla@odnss.com

Darin P. Shreves
OGLETREE DEAKINS NASH SMOAK & STEWART P.C.
darin.shreves@ogletree.com